■ STEVEN E. SLAGSVOL, Appellant, v MARYANNE F. SCHNECK, Respondent. [624 NYS2d 182] —In a matrimonial action, the plaintiff-husband appeals, as limited by his brief, from so much of an order of the Supreme Court, Dutchess County (Jiudice, J.), dated June 10, 1993, as, upon the granting of reargument, adhered to a prior determination denying his motion, *inter alia,* to reduce or terminate his maintenance obligations.

Ordered that the order is affirmed insofar as appealed from, with costs.

A separation agreement which specifies, in detail, several conditions or events which will trigger a reduction or termination of a matrimonial litigant's obligation to pay maintenance to his or her ex-spouse, and fails to include the ex-spouse's remarriage as one of these triggering events or conditions, will generally be construed as an implicit agreement to continue maintenance even after such a remarriage has in fact occurred *(see generally, Matter of Benny v Benny,* 199 AD2d 384; *Sacks v Sacks,* 168 AD2d 733; *Fredeen v Fredeen,* 154 AD2d 908). For example, in *Matter of Benny v Benny (supra),* the agreement specified (1) the death of either party and (2) the cessation of all child support as events which would trigger suspension of the husband's duty to pay maintenance. The agreement also fixed January 15, 2004, as an outside limit on the duration of this obligation. Based on these circumstances, the court concluded that the parties had "clearly manifested

the * * * intent that maintenance would not terminate as a matter of law in the event that the former wife remarried" (199 AD2d, at 387).

In the present case, the parties' agreement defined the circumstances under which the husband's maintenance obligations would be reduced, that is, it provided for a reduction in maintenance upon the wife obtaining employment. The agreement failed to define the wife's remarriage as an event which would terminate maintenance. This circumstance alone might, as the dissent suggests, be insufficient to support the conclusion, as a matter of law, that the husband implicitly agreed to pay post-remarriage maintenance. However, this circumstance must be evaluated in light of the husband's explicit concession that, at the time that the separation agreement was being drafted, he in fact refused to accept his attorney's advice that "there should be provisions in the agreement regarding termination of maintenance upon defendant's remarriage or cohabitation". The omission from the parties' agreement of any term providing for the termination of maintenance upon the wife's remarriage was admittedly deliberate, and to allow the husband to in effect amend his agreement at this stage would thus constitute a clear departure from the rule laid down in *Matter of Benny v Benny (supra)*, and the other cases above noted. Bracken, J. P., Balletta and Ritter, JJ., concur.

Florio, J., dissents and votes to reverse the order insofar as appealed from and remit the matter for a hearing with the following memorandum in which Pizzuto, J., concurs: I respectfully disagree with the decision of my colleagues. My colleagues would determine the parties' intent as to maintenance solely from the papers presented on the motion. I believe the papers present a question of fact as to the parties' intent, and would therefore remit for a hearing on the issue of whether they intended that maintenance should continue after the wife's remarriage.

The majority, by relying upon a "concession" in the husband's reply affidavit, appears to concede that the intent of the parties cannot be determined as a matter of law from within the four corners of the separation agreement. However, that "concession" does not exist in isolation. Rather, it appears within a paragraph within the context of the entire reply affidavit. Reading the paragraph in its entirety casts, perhaps, a different light on what the husband meant by those words. The entire paragraph reads as follows: "By way of background, I did retain James Meier to draft a separation agreement at the time the Defendant announced that she was

vacating the marital home with the children. My only concern was the welfare of our children. Mr. Meier, at that time, did advise that there should be provisions in the agreement regarding termination of the maintenance upon Defendant's remarriage or co-habitation. I did not feel it was necessary and refused Mr. Meier to put such terms in based on my overriding concern for the children and my trust in the Defendant."

Clearly, when read in context, the statement is more properly interpreted as minimizing any idea that such a provision was necessary, rather than conceding that maintenance would continue after remarriage. Thus, I find it an inappropriate basis upon which to make any determination as to the intent of the parties.

Moreover, to my mind, the majority has inappropriately relied upon *Matter of Benny v Benny* (199 AD2d 384), *Sacks v Sacks* (168 AD2d 733), and *Fredeen v Fredeen* (154 AD2d 908) to support their position. To understand why this is so, it is necessary to quickly review the long history providing for the statutory termination of maintenance (or alimony) upon the remarriage of a spouse which leads up to the strictly limited exception these cases represent.

By statute dating back almost to the 19th century, an award of permanent maintenance (or alimony) terminates upon a spouse's remarriage or death *(see,* Domestic Relations Law § 236 [B] [6] [c], formerly CCP 1771, CPA 1172-c, 1159; *see also,* Domestic Relations Law § 248). For a long period of time it was also considered to be against public policy to enforce an agreement specifically providing for support payments to a former spouse who had remarried *(see, e.g., Schley v Andrews,* 225 NY 110; *Kirkbride v Van Note,* 275 NY 244). Indeed, the Practice Commentary to Domestic Relations Law § 236 (B) (6) (c) goes so far as to suggest that the reduction provided therein is automatic (Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:10, at 224). Eventually, the law permitted the enforcement of separation agreements (or stipulations) which explicitly provided for continuation of maintenance (or alimony) past a spouse's remarriage.

It is only relatively recently, however, that the law has also begun to permit the enforcement of such an obligation in a limited number of instances where an agreement fails to explicitly provide for payment of maintenance past remarriage. One such instance is where the parties have implicitly provided for such continuing maintenance (in a separation

agreement or a stipulation of settlement) by setting a terminating condition or conditions for the payment of maintenance, while simultaneously failing to include remarriage as one of them *(see, Matter of Benny v Benny, supra; Jung v Jung,* 171 AD2d 993; *Sacks v Sacks, supra; Fredeen v Fredeen, supra).* In yet another very recent exception, the agreement or stipulation of settlement juxtaposes an agreement to accept a diminution of a right *(e.g.,* to receive a percentage of a pension), with an agreement to provide maintenance *(see, Quaranta v Quaranta,* 212 AD2d 683). What appears to unite these cases is that the intent to have maintenance continue past remarriage can be found within the agreement itself. Either it is explicitly stated therein, or it can be deduced from the text of the agreement by applying a standard rule of legal construction, *e.g., expressio unius est exclusio alterius.*

However, the agreement in the case at bar is barren of any provision providing for the termination of maintenance, or even a quid pro quo providing for permanent maintenance in return for the wife's waiving her right in a pension plan. Rather, it provides only for a reduction (but not termination) of maintenance in the event the wife obtains employment. Thus, the agreement here appears to fall squarely within the provisions of Domestic Relations Law § 236 (B) (6) (c) and not within any one of the heretofore recognized exceptions.

It must be noted that the husband failed to promptly move to terminate payment of maintenance after learning of his wife's remarriage. Thus, in reliance upon *Beutel v Beutel* (55 NY2d 957), a strong argument can be made that by their course of conduct, the parties have affirmatively ratified the majority's interpretation of the agreement, i.e., that the parties intended that maintenance payments continue past the wife's remarriage.

However, the wife has failed to demonstrate that she has lived up to both the spirit and intent of the parties' separation agreement. Article VII of the agreement provides that maintenance shall be reduced upon the wife's obtaining employment. In Article VIII of the agreement, the parties stipulated that the husband's obligation to pay child care expenses would also be reduced when the wife obtained employment, *"as expected by both parties"* (emphasis supplied). That expectation, i.e., that the wife would obtain employment, was made an explicit part of Article VIII and an implicit part of Article VII of the separation agreement. The wife does not deny that she failed to seek employment. Moreover, the husband maintains that the terms of the separation agreement were negotiated solely

between himself and his wife, and his attorney, Mr. Meier (the attorney who drafted the agreement), was retained solely to draft the legal document as dictated by the husband.

Finally, the husband has explicitly sworn that it was the parties' intent that maintenance would terminate upon remarriage. He has also offered a plausible explanation, i.e., his trust in the wife, for his failure to include a provision explicitly providing for the termination of maintenance upon the wife's remarriage. These averments, together with the factual allegations raised by the husband as to the wife's behavior, and the failure of the separation agreement to set out any conditions under which maintenance payments would permanently cease (cf., Matter of Benny v Benny, supra; Jung v Jung, supra), raise factual questions which cannot be resolved on the moving papers. I would therefore, remit for a hearing and further proceedings.